## CONTINUATION PAGES IN SUPPORT OF SEARCH WARRANT

## INTRODUCTION

1.     I am an "investigative or law enforcement officer of the United States" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).  I have been employed by the Federal Bureau of Investigation (FBI) as a Special Agent since June 2010.  I am currently assigned to the Capital Area Resident Agency in York, Pennsylvania, within the FBI's Philadelphia Division. Prior to my employment with the FBI, I worked as a Certified Public Accountant and served in the United States Army. I have participated in numerous investigations involving the unlawful distribution of controlled substances and have participated in surveillances, the execution of search warrants, the recovery of substantial quantities of narcotics and narcotics paraphernalia, and the debriefings of informants and cooperating witnesses.  I have reviewed recorded conversations, as well as documents and other records relating to complex financial crimes, narcotics trafficking and money laundering. Through my training, education, and experience, I have become familiar with the ways illegal drugs are transported, stored, and distributed, how firearms are possessed and used in connection with drug trafficking, and

1

the methods by which drug traffickers store and conceal the proceeds of their illegal activities. I am also familiar with the way drug traffickers utilize communication devices to further their activities.

2.     I have successfully completed trainings dealing with search and seizure warrants, enforcement of federal drug laws, and the identification of controlled substances. I have also received training in surveillance, counter-surveillance, smuggling of drugs, and laundering of drug proceeds.

3.     I have acted as an affiant on applications for the interception of wire and electronic communications.  I have also served as a monitor, served as a member of the surveillance team, and have listened to thousands of intercepted telephone calls between individuals identified as suspected narcotics traffickers.

## BASIS FOR FACTS CONTAINED IN THIS AFFIDAVIT

4.     I make this affidavit, in part, based upon information from the following sources: written reports about this investigation prepared by law enforcement officers; written reports regarding debriefings conducted by law enforcement officers of confidential sources and others in relation to Willie Bristol; and review of photographs and videos taken

at or near the time of Willie Bristol's arrest.

5.      Except where otherwise noted, the information set forth in this affidavit has been provided to me directly or indirectly by other law enforcement officers.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer (who may have had either direct or hearsay knowledge of the statement) to whom I have spoken or whose report I have read and reviewed.  Similarly, information resulting from surveillance, except where indicated, does not set forth my personal observations but rather has been provided directly or indirectly by other law enforcement officers who conducted such surveillance.

6.      I have not set forth each and every fact learned during the course of this investigation.  Rather, I have set forth only the facts that I believe are necessary to establish probable cause for the issuance of a search and seizure warrant based on the instant affidavit.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

7.    Your Affiant is requesting authorization to search the following item, referred to as the "DEVICE": One (1) Grey Samsung Cellular Telephone.

8.    The DEVICE was seized from Willie Lee Bristol on August 5, 2021, by the Harrisburg Bureau of Police.

9.    The DEVICE was subsequently transported to the Harrisburg Police Department where it was maintained in a secured evidence room.

10.    The applied-for search warrant would authorize the forensic examination of the DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

11.    In August of 2021, The Harrisburg Bureau of Police began an investigation on Willie Lee Bristol aka "Snoop".   The investigation determined that Bristol is responsible for the distribution of marijuana, cocaine hydrochloride, and methamphetamine in the Middle District of Pennsylvania.   Additionally, Bristol has possessed firearms as a felon and in furtherance of drug trafficking.

4

12.    To date, investigators have interviewed cooperators, conduced controlled purchases of marijuana from Bristol, conducted a search warrant on Bristol's residence, and interviewed Bristol himself at the time of his arrest.

13.    During the month of August 2021, members of the Harrisburg Bureau of Police and the Harrisburg City Vice and Organized Crime Unit interviewed a Confidential Source (here after referred to as the CS). The CS was providing information for monetary gain. Your Affiant believes the information the CS provided to be reliable because the CS had provided credible information in the past and much of the information the CS provided was ultimately corroborated during the instant investigation.  Additionally, information provided by this CS has led to convictions in Dauphin County Courts.   The CS stated s/he has purchased marijuana from Bristol in the past in Harrisburg, Pennsylvania. The CS provided a telephone number of 717-839-1055 for Bristol. The CS indicated Bristol operated a white sedan with a "Snoopy" emblem on the side.

14.    During the month of August 2021, members of the Harrisburg Bureau of Police Vice Unit utilized the CS to conduct two controlled

purchases of marijuana from Bristol in Harrisburg, Pennsylvania. For the first controlled purchase, investigators met with the CS at a predetermined location. At the direction of investigators, the CS contacted Bristol at phone number 717-839-1055. While in the presence of investigators, the CS and Bristol had a conversation relating to the purchase of marijuana. The CS was searched for any contraband or money with negative results. Bristol directed the CS to a location in the Uptown area of the City of Harrisburg, Pennsylvania for the purchase of marijuana. The CS was provided with prerecorded Dauphin County Funds to be used for the transaction. The CS was driven to the predetermined area by an Undercover Officer (UC).

15. Surveillance was established at the location in the Uptown area of the City of Harrisburg, Pennsylvania. During surveillance, investigators observed a white sedan with a "Snoopy" emblem on the side pull up to an intersection into the area. Investigators observed Bristol exit the driver seat of the white sedan and meet with the CS at the rear, driver's side door of the vehicle, where a hand-to-hand transaction between Bristol and the CS was observed by investigators. After the transaction, the CS returned to the UC and turned over a quantity of

marijuana. The CS was again searched and found negative for any contraband or money.

16.    The CS did not meet with any other individuals while outside of the UC vehicle.

17.    For the second controlled purchase, investigators met with the CS at a predetermined location. At the direction of investigators, the CS contacted Bristol at phone number 717-839-1055. While in the presence of investigators, the CS and Bristol had a drug related conversation relating to the purchase of marijuana. The CS was searched for any contraband or money with negative results.  Bristol directed the CS to an area in the Allison Hill Section of City of Harrisburg, Pennsylvania. The CS was provided with prerecorded Dauphin County Funds to be used for the transaction.  The CS was driven to the area of the 1900 block of Walnut Street by an Undercover Officer (UC).

18.    Bristol was observed by investigators and the UC in this area. Bristol entered the UC vehicle and instructed the UC to drive him to the first block of North 18th Street.  Once outside 70 N 18th Street, Harrisburg, Pennsylvania, Bristol and the CS exited the vehicle and entered the front door of 70 N. 18th Street.  After a short period of time,

Bristol and the CS exited the front door of 70 North 18th Street and returned to the UC vehicle.  The UC drove Bristol to the 1900 block of Walnut Street where he exited the vehicle. After the transaction, the CS turned over a quantity of marijuana. The CS was again searched and found negative for any contraband or money.

19.    The CS did not meet with anyone else outside of 70 N 18th Street, Harrisburg, Pennsylvania.

20.    On August 4, 2021, the Honorable Dauphin County Court of Common Pleas Judge William Tully, authorized a search warrant for the residence of 70 N 18th Street, Harrisburg PA, 17103.

21.    On August 5, 2021, members of the Harrisburg Bureau of Police, Dauphin County Crisis Response Team (CRT) and Dauphin County Drug Task executed the search warrant on 70 N 18th Street, Harrisburg PA. Bristol was located inside the residence.

22.    Once the residence was cleared by law enforcement, a search of the residence was conducted. Located on the 2nd floor, front bedroom was a gray Samsung cell phone ("the Device).  Investigators found that the DEVICE had the phone number 717-839-1055

23.    A search of the residence produced quantities of marijuana, cocaine, and methamphetamine in quantities consistent with drug trafficking, a Mossberg International Semiautomatic 22. Caliber Pistol, a Smith and Wesson Semiautomatic M&P Shield 9mm Pistol, $9,611 and drug packaging materials.

24.    Bristol has a 2006 conviction for Possession with the Intent to Distribute in Excess of 50 grams of Crack cocaine making it illegal for him to possess a firearm. Bristol also has two other convictions for Possession with the Intent to deliver controlled substances.

25.    On March 23, 2022, a federal grand jury sitting in Harrisburg, Pennsylvania returned an indictment charging the defendant with: possession with intent to distribute 50 grams and more of methamphetamine, in violation of 21 U.S.C. §841 (Count 1); possession with intent to distribute cocaine, in violation of 21 U.S.C. §841 (Count 2); possession with intent to distribute marijuana, in violation of 21 U.S.C. §841 (Count 3); possession of firearms in furtherance of drug trafficking, in violation of 18 U.S.C. §924(c) (Count 4); and possession of firearms by a felon, in violation of 18 U.S.C. §922(g) (Count 5).

26.    Trial is scheduled for January 12, 2026.

27.    Your Affiant, through my training and experience, knows that individuals who are engaged in drug trafficking carry and use cell phones. Your Affiant knows that these phones often contain intricate details of drug trafficking activities to include name and numbers of customers, the distributors sources of supply, text message conversations between the customers and the source of supply, evidence of narcotics transactions, narcotic debts, and records of money owed.  Your Affiant believes that the DEVICE will contain evidence of Willie Bristol's activities and will provide investigators with a detailed view of this distribution network.

28.    The Device was seized by the Harrisburg Bureau of Police on August 5, 2021 and placed into the Harrisburg Bureau of Police Evidence Room located at 123 Walnut Street, Harrisburg PA, 17101.

29.    In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of law enforcement.

## TECHNICAL TERMS

30.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    GPS:  A GPS navigation device uses the Global Positioning System to display its current location.  It often contains records the locations where it has been.  Some GPS navigation devices can give a user driving or walking directions to another

11

location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may

12

also include global positioning system ("GPS") technology for determining the location of the device.

       d.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

31.    Based on my training, experience, and research, I know that the DEVICE has capabilities that allow it to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

32.    I also know through training and experience that drug traffickers utilize wireless telephones to contact other associates (or co-conspirators) who are involved with the supply, transportation, and distribution of illicit drugs and other illegal activities. As a result, the wireless telephones of drug traffickers often contain historical records relating to their drug-trafficking activities, to include: Locations they have travelled to meet co-conspirators to exchange contraband, telephone

numbers of drug-trafficking associates, photographs and names of contacts who have called or have been called, records of received and sent text messages, emails and other forms of communications, to include messaging within phone applications, and photographs/videos of money, firearms, and drugs.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

34.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICE was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the DEVICE because:

　　　a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted

14

or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.      Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.    Therefore,  contextual  information  necessary  to understand  other  evidence  also  falls  within  the  scope  of  the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

15

35. *Nature of examination.*    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the DEVICE consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of a device to human inspection in order to determine whether it is evidence described by the warrant.

36. *Manner of execution.*    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

<u>CONCLUSION</u>

37.   I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the DEVICE described in Attachment A to seek the items described in Attachment B.

# ATTACHMENT A
# ITEM TO BE SEARCHED

Your affiant is requesting the authorization to search the following item:

a.      A gray Samsung cell phone (hereafter "DEVICE"). The Device was seized from Willie Lee Bristol on August 5, 2021 by the Harrisburg Bureau of Police, where it was subsequently secured in Harrisburg, Pennsylvania.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

## Particular Things to be Seized

All records on the Device described in Attachment A that relate to violations of 21 U.S.C. 841(a)(1) and 846 and including:

    a.    lists of customers and related identifying information;

    b.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.    any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.    any information recording Willie Bristol's schedule or travel;

    e.    photographs and videos of firearms, drugs, and cash;

    f.    all bank records, checks, credit card bills, account information, and other financial records.

2.    Evidence of user attribution showing who used or owned the Device(s) at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means

they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.